**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

               Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,

               Defendant.

Case No. 15-cv-5916 (RMB)

ORAL ARGUMENT REQUESTED

---

**NFL MANAGEMENT COUNCIL'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO CONFIRM AND IN OPPOSITION TO MOTION TO**
**VACATE THE LABOR ARBITRATION AWARD REGARDING TOM BRADY**

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash (*pro hac vice*)
Stacey R. Eisenstein (*pro hac vice*)
Gregory W. Knopp (gk5007)
James E. Tysse (*pro hac vice*)
1333 New Hampshire Avenue
Washington, DC 20036
Tel:  (202) 887-4000
dnash@akingump.com
seisenstein@akingump.com
gknopp@akingump.com
jtysse@akingump.com

Robert Pees (rp0393)
Jessica Oliff Daly (jd9012)
One Bryant Park
New York, New York 10036
Tel:  (212) 872-1000
rpees@akingump.com
jodaly@akingump.com

*Counsel for Plaintiff National Football League*
*Management Council*

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.      THE NFL IS ENTITLED TO CONFIRMATION OF THE AWARD. .................3

    II.     THE NFLPA'S COUNTERCLAIM PROVIDES NO BASIS FOR VACATING
            THE AWARD............................................................................................5

           A.     The Commissioner interpreted and applied the CBA and past precedent in
                    rejecting the Union's "notice" arguments..................................................... 5

           B.     Relying on his interpretation of the CBA and his findings of fact, the
                    Commissioner considered and rejected the Union's "fair and consistent"
                    arguments................................................................................................. 9

           C.     The Appeal hearing was procedurally fair................................................ 10

           D.     The Commissioner was not "evidently partial." ....................................... 13

CONCLUSION............................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Black v. Nat'l Football League Players Ass'n,*
    87 F. Supp. 2d 1 (D.D.C. 2000) ................................................................14

*Connecticut Light & Power Co. v. Local 420, Int'l Bhd. of Elec. Workers,*
    718 F.2d 14 (2d Cir. 1983)......................................................................7

*Dearborn Sausage Co.,*
    118 Lab. Arb. Rep. (BNA) 632 (2003) (VanDagens, Arb.) ................................8

*Ecoline, Inc. v. Local Union No. 12 of Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers,*
    271 F. App'x 70 (2d Cir. 2008) ...............................................................13

*Emery Air Freight Corp. v. Local Union 295,*
    786 F.2d 93 (2d Cir. 1986).....................................................................8

*Erving v. Virginia Squires Basketball Club,*
    349 F. Supp. 716 (E.D.N.Y. 1972) ...........................................................14

*Grinnell Hous. Dev. Fund Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO,*
    767 F. Supp. 63 (S.D.N.Y. 1991) ............................................................10

*Ill. Power Co.,*
    84 Lab. Arb. Rep. (BNA) 586 (1985) (Penfield, Arb.)...................................8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,*
    729 F.3d 99 (2d Cir. 2013).............................................................2, 11, 15

*MLBPA v. Garvey,*
    532 U.S. 504 (2001) (per curiam) .......................................................2, 5, 9, 10

*Morris v. New York Football Giants, Inc.,*
    575 N.Y.S.2d 1013 (Sup. Ct. 1991)..........................................................14

*National Football League Players Association v. National Football League,*
    No. 12-cv-00173, -- F. Supp. 3d --, 2015 WL 795253 (D. Minn. Feb. 26, 2015) ...................7

*New York City Dist. Council of Carpenters v. Ross Sales & Contracting Inc.,*
    No. 14 CIV. 04106, 2015 WL 150923 (S.D.N.Y. Jan. 5, 2015)............................2

*NHLPA v. Bettman,*
    No. 93 CIV. 5769 (KMW), 1994 WL 738835 (S.D.N.Y. Nov. 9, 1994) ..................13, 14, 15

*Red Apple Supermarkets/Supermarkets Acquisitions v. Local 338 RWDSU*,
No. 98-cv-2302, 1999 WL 596273 (S.D.N.Y. Aug. 9, 1999)............................................10, 13

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*,
116 F.3d 41 (2d Cir. 1997)..........................................................................................2, 5, 15

*State ex rel. Hewitt v. Kerr*,
461 S.W.3d 798 (Mo. 2015) .................................................................................................14

*Supreme Oil Co. v. Abondolo*,
568 F. Supp. 2d 401 (S.D.N.Y. 2008)...........................................................................10, 12

*Union Pac. R.R. Co. v. Sheehan*,
439 U.S. 89 (1978) (per curiam) .........................................................................................2

*United Paperworkers Int'l Union v. Misco*,
484 U.S. 28 (1987).............................................................................................................4, 9

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum &
Plastic Workers of Am.*,
461 U.S. 757 (1983)..............................................................................................................7

*Wackenhut Corp. v. Amalgamated Local 515*,
126 F.3d 29 (2d Cir. 1997)............................................................................................2, 6, 7

*Williams v. Nat'l Football League*,
495 F. App'x 894 (10th Cir. 2012) ...................................................................................14

*Williams v. NFL*,
582 F.3d 863 (8th Cir. 2009) ........................................................................................13, 14

iii

## <u>INTRODUCTION</u>

This case is before the Court on cross-motions for review of an arbitration decision issued under the parties' collective bargaining agreement ("CBA").  NFL Commissioner Roger Goodell upheld on appeal the four-game suspension of New England Patriots quarterback Tom Brady for his role in the deflation of the Patriots' footballs at the 2015 AFC Championship Game, as well as his failure to cooperate fully and candidly in the league's ensuing investigation.

For decades, the CBA has expressly authorized the Commissioner both to define conduct detrimental to the integrity of the game of professional football and to discipline a player, including by suspension, for engaging in such conduct.  After a months-long investigation by experienced and highly respected professionals resulting in a thorough and public report, the Commissioner exercised his authority to suspend Brady.  Brady then exercised his right under the CBA to appeal that discipline to the Commissioner.  Following an extensive hearing where Brady was represented by both private and NFLPA counsel, the Commissioner upheld the suspension in a 20-page opinion, ECF No. 4-2 ("Award"), that repeatedly interprets and applies the CBA.  That internal appeals process accords with Congress's desire for parties to settle their labor disputes privately through final and binding arbitration.

The NFLPA now asks this Court to upend the procedures that the parties negotiated and agreed to for resolving disputes and to substitute its own judgment for that of the Commissioner, who has long held exclusive authority for protecting the integrity of the game.  The Union argues that the Commissioner should have made different factual findings, or that he should have differently interpreted and applied the CBA and prior arbitral decisions issued under the CBA. Indeed, the NFLPA invites this Court to review all of the Commissioner's findings *de novo* by

considering hundreds of exhibits and the complete transcript from the arbitration hearing.  *See*
ECF No. 28 (Am. Answer and Countercl. at 2 n.2) ("Countercl.") & attached exhibits.

These requests are foreclosed by binding precedent, which firmly establishes that parties
to a labor agreement choose their own methods of dispute resolution—and federal courts are
bound to respect their bargain.  Judicial review of labor arbitration awards is thus subject to a
highly deferential standard that is among the "narrowest known to the law."  *Union Pac. R.R.
Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam); *see New York City Dist. Council of
Carpenters v. Ross Sales & Contracting Inc.*, No. 14 CIV. 04106, 2015 WL 150923, at *2
(S.D.N.Y. Jan. 5, 2015) ("Review of an arbitration award is extremely deferential."); *see also
Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir.
2013) (party seeking vacatur must meet a "very high" burden of proof "to avoid confirmation").

Contrary to the Union's request, a court is "not authorized to review the arbitrator's
decision on the merits despite allegations that the decision rests on factual errors or misinterprets
the parties' agreement."  *MLBPA v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam).  The Court
must confirm the award if it "draws its essence" from the CBA.  *Saint Mary Home, Inc. v. Serv.
Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997).  In other words, even if the Court
were "convinced" that the arbitrator "committed serious error," the Award could not be vacated
so long as the arbitrator was "even arguably construing or applying the [CBA] and acting within
the scope of his authority."  *Garvey*, 532 U.S. at 509 (quoting *E. Assoc. Coal Corp. v. Mine
Workers*, 531 U.S. 57, 62 (2000)); *see Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d
29, 32 (2d Cir. 1997) (failure to "follow arbitral precedent" is not a "reason to vacate an award").

The Award easily satisfies this extraordinarily deferential standard of review.  Simply
put, while the Commissioner's factual findings and interpretation of the CBA and prior

arbitration precedent cannot seriously be challenged, the Union's arguments must fail regardless. Because the Award plainly construes the CBA, and because Brady clearly received the fair hearing he and his Union bargained for, the Court should confirm the Award and deny the Union's motion to vacate.

## ARGUMENT

### I.   THE NFL IS ENTITLED TO CONFIRMATION OF THE AWARD.

The CBA expressly authorizes the Commissioner to discipline players—including by suspension—for engaging in conduct that is "detrimental to the integrity of, or public confidence in, the game of professional football."  Award at 5 (citing CBA Art. 46 § 1(a)); *see also* ECF No. 28-150, at 15 (*Ray Rice* (Nov. 28, 2014) (Hon. Barbara Jones, Arb.) ("The Commissioner has 'always had sole discretion to determine what constitutes conduct detrimental'[.]")).  This authority is reflected, among other places, in the CBA-prescribed standard-form Player Contract, in which every NFL player acknowledges and agrees that if he engages in conduct "reasonably judged by the Commissioner to be detrimental to the League," the Commissioner may "suspend [him] for a period certain or indefinitely."  Award at 17, 18; *see also* ECF No. 4-1 ("CBA"), App. A, ¶ 15 (NFL Player Contract).  Moreover, the CBA provides that "all disputes" over discipline imposed for "conduct detrimental" must be resolved exclusively through the "final" and "binding" appeal procedures in Article 46, which explicitly states that the Commissioner may preside over such appeals "at his discretion."  CBA Art. 46 §§ 1-2.

That is precisely what happened here.  Following notice of his discipline, which included the underlying factual basis as set forth in the 139-page report prepared by senior attorneys at Paul, Weiss, Brady took full advantage of the CBA's appeal procedures and was provided with all rights under Article 46 (and more).  The Commissioner presided over Brady's appeal and, after taking into account "the entire record, including Mr. Brady's testimony, the credibility of

other witnesses and the documentary evidence"—including Brady's acknowledgment "that the Patriots' equipment personnel would not do anything to a game ball that was inconsistent with what he wanted"—he found that Brady "knew about, approved of, consented to, and provided inducements" in support of a scheme to tamper with the game balls used in the AFC Championship Game.  Award at 8, 10; *see id.* (relying on, among other things, Brady's spike in communications with equipment personnel immediately after the deflation incident and the fact that one Patriots equipment manager referred to himself as the "deflator" and to the use of a "needle").

The Commissioner further concluded that Brady had failed to cooperate fully with the investigation by refusing to share with investigators potentially relevant text messages and e-mails that they had requested.  That conclusion was "reinforce[d]" by the revelation at the hearing that, on the eve of meeting with investigators, Brady directed that his cell phone be destroyed, causing the permanent loss of "potentially relevant evidence with knowledge that the evidence had been sought in the investigation."  *Id.* at 11, 14.  Brady failed to inform the investigators that he had destroyed his cellphone containing the relevant evidence, and "offered no explanation" for doing so.  *Id.* at 1-2, 12.

Based on these factual findings, and his interpretation of the CBA and past precedent, the Commissioner determined that Brady had engaged in "conduct detrimental to the integrity of, or public confidence in, the game of professional football" that warranted a four-game suspension.  Award at 20.  Those factual findings, as well as the Commissioner's interpretations of the CBA and related arbitral precedent, are not subject to judicial review other than for the purpose of confirming that the Commissioner was "arguably" applying the CBA.  *United Paperworkers Int'l Union v. Misco*, 484 U.S. 28, 37-38 (1987) ("[I]t is the arbitrator's view of the facts and of

4

the meaning of the contract that [the parties] have agreed to accept."); *Garvey*, 532 U.S. at 509

(courts not authorized to review claims that arbitrator committed "factual errors or

misinterpret[ed] the parties' agreement").

## II.    THE NFLPA'S COUNTERCLAIM PROVIDES NO BASIS FOR VACATING THE AWARD.

### A.    The Commissioner interpreted and applied the CBA and past precedent in rejecting the Union's "notice" arguments.

The Union's primary argument for vacatur is that Brady was not provided with notice

that his specific misconduct here could result in a suspension.  But in arguing about notice, the

Union is really contending that the Commissioner incorrectly interpreted and applied the CBA

when he found that the provision notifying Brady that he could be suspended for conduct

detrimental clearly encompassed violating playing rules to obtain a competitive advantage.  *See*

Award at 16-17 (considering and rejecting the Union's "notice" arguments).  All of those

"notice" arguments were carefully considered and rejected by the Commissioner based on his

assessment of the evidence—including Brady's credibility—and his interpretation of the CBA

and past precedent.  In doing so, as the Award shows, there is no serious question that the

Commissioner was "arguably construing or applying the contract."  *Garvey*, 532 U.S. at 509; *see*

*Saint Mary,* 116 F.3d at 44 (as long as arbitrator explains conclusions "in terms that offer even a

barely colorable justification for the outcome reached, confirmation of the award cannot be

prevented by litigants who merely argue . . . for a different result") (citation omitted).

The Union ignores these well-settled principles and asks the Court to reevaluate the

evidence and construe past arbitration precedent differently.  Thus, the NFLPA argues that the

Commissioner may not impose a suspension because the Union thinks that the Player Policy

regarding "equipment violations" only put Brady on notice of a potential fine.  *See* Countercl.

¶¶ 107-112.  But when the NFLPA made the same argument below, *see* ECF No. 28-231 at 4-5

("NFLPA Post-Hearing Br."), the Commissioner rejected it, finding "Mr. Brady had notice, and in fact was fully aware of, the established rule governing the pressure of NFL games balls . . . and [had] ample reason to expect that a violation of that rule . . . would be deemed conduct detrimental." Award at 18. That conclusion is undeniably correct. The policy the Union cites expressly provides that "[o]ther forms of discipline, including higher fines and suspension[s] may also be imposed." *See* ECF No. 28-132 at 20 (League Policies for Players).

The NFLPA's reliance on the "Integrity of the Game & Enforcement of Competitive Rules" policy, which specifically bars equipment tampering by clubs and club personnel, is similarly misplaced. *See* Countercl. ¶¶ 113-119. When the NFLPA made the identical argument below that Brady lacked notice because he never received a copy of that policy, *see* NFLPA Post-Hearing Br. at 3-4, the Commissioner rejected it, finding that this policy "was *not* the source or the basis for the discipline imposed here." Award at 17 n.19 (emphasis added). Rather, Brady was "suspended for conduct detrimental to the integrity of and public confidence in the game of professional football" (Award at 17-18 & n.19); such conduct detrimental "plainly" includes "[t]ampering with the game balls after they have been approved by the game officials . . ." (*id.* at 17). In any event, by its express terms, that policy also provides for discipline that "is *not* limited" to a fine. Award at 15-16, n.16. Again, the Union's disagreement with these findings is no basis for vacating the Award. *See Wackenhut,* 126 F.3d at 32 (court must "affirm an award it views as incorrect—even very incorrect—so long as the decision is plausibly grounded in the parties' agreement").

The Union also argues that the Commissioner incorrectly interpreted prior arbitration decisions, including the decision in the *Bounty* arbitration appeal, in contending that Brady had no notice that he could be suspended for impeding the investigation, a positon emphatically

rejected by Second Circuit precedent.  Courts may *not* "second-guess" an arbitrator's interpretation of precedent and past practice, as the "law of the shop" is quintessentially a legal determination entrusted to the arbitrator alone.  *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764-765 (1983) ("A federal court may not second-guess" arbitrator's "conclusion that he was not bound by" a prior arbitrator's decision); *Wackenhut*, 126 F.3d at 32 (alleged failure to "follow arbitral precedent" is not a "reason to vacate an award").  The Award explains, at length, why the Commissioner determined that the *Bounty* decision was not applicable to the facts that he had found here.  *See* Award at 14-15 & n.14 (*Bounty* is "fundamentally different" from this case because it involved a situation where coaches and other management encouraged "obstruction of the original investigation").  Under the governing standard of review, the Commissioner's interpretation of *Bounty* cannot be a basis for vacatur.  *See Connecticut Light & Power Co. v. Local 420, Int'l Bhd. of Elec. Workers,* 718 F.2d 14, 20 (2d Cir. 1983) (alleged "inconsistency" between awards is no ground for vacatur).  That is particularly true because the *Bounty* decision itself states that it "should not be considered precedent for whether similar behavior in the future merits player suspensions or fines."  Award at 14-15 n.14.[1]

Moreover, the Union may not challenge the Commissioner's finding that Brady had notice of the possibility that he could be suspended for obstructing the investigation.  The Commissioner construed the CBA in concluding that Brady's admitted failures to cooperate— including his refusal to turn over relevant communications despite being offered extraordinary

---

[1] The Union mistakenly relies on the district court decision in the Adrian Peterson case, *National Football League Players Association v. National Football League*, No. 12-cv-00173, -- F. Supp. 3d --, 2015 WL 795253 (D. Minn. Feb. 26, 2015), for the proposition that this court should interpret the "law of the shop" *de novo. See, e.g.*, Countercl. ¶¶ 3-5.  But that decision, which is currently on appeal, was based on a distinct domestic violence policy not at issue here.  It is also contrary to Second Circuit precedent, as the cases cited in the text confirm.

privacy safeguards, as well as the destruction of the phone containing those communications—

"falls squarely within the scope of conduct that may reasonably be judged by the Commissioner

to be 'conduct detrimental' to the league."  Award at 11-13, 17.  The Commissioner's

interpretation of the governing CBA provision controls here.[2]

Finally, the NFLPA's argument that Brady lacked notice that he could be disciplined for

being "generally aware" of others' misconduct is a straw man.  The Commissioner did not

discipline Brady for merely being "generally aware" of a violation of the playing rules.  Rather,

as the Award makes clear, the Commissioner suspended Brady (1) for having "approved of,

consented to, and provided inducements in support of" "a scheme to tamper with the game balls

after they had been approved by the game officials for use in the AFC Championship Game" and

(2) for having "willfully obstructed" the subsequent investigation.  Award at 13, 17-18.

The Commissioner carefully considered each of the Union's arguments that Brady had

been suspended without proper notice.  He explicitly rejected them based on his assessment of

the evidence and his interpretation and application of the CBA and arbitration precedent

construing the agreement.  As a matter of law, the Union's disagreement with those findings and

conclusions is not a basis for vacating the award.  *See Emery Air Freight Corp. v. Local Union*

*295*, 786 F.2d 93, 100-01 (2d Cir. 1986) (courts must defer questions of CBA and "law of the

---

[2] Employees owe a duty to cooperate in any investigation of workplace misconduct, and failure to do so is a permissible basis for discipline in and of itself.  *See* DISCIPLINE & DISCHARGE IN ARBITRATION 2-20 (Norman Brand & Melissa H. Biren eds., 3d ed. 2015) ("[a] corollary to the employer's duty to investigate is the employee's duty to cooperate with the investigation"; "[a]rbitrators frequently sustain discipline for insubordination when the employee refuses to cooperate with the investigation"); *Ill. Power Co.*, 84 Lab. Arb. Rep. (BNA) 586, 590-91 (1985) (Penfield, Arb.) (employee's refusal to cooperate in employer's investigation alone justified his termination).  This fundamental labor law principle applies "even in the absence of a specific rule" warning of the consequences for failure to cooperate.  *Dearborn Sausage Co.*, 118 Lab. Arb. Rep. (BNA) 632, 637 (2003) (VanDagens, Arb.) ("An employee surely should understand that honesty and cooperation would be expected in such a circumstance.").

8

shop" interpretation to the arbitrator designated in the contract, who "surely knows the parties,

their past bargaining history, and the 'law of the shop' … better than we do").

### B.   Relying on his interpretation of the CBA and his findings of fact, the Commissioner considered and rejected the Union's "fair and consistent" arguments.

The Union also contends that the affirmance of Brady's four-game suspension was

"unfair" because it was based on "unreliable evidence" and "unsupported assumptions"

regarding deflation of footballs.  Countercl. ¶¶ 135-146; *see id.* ¶ 143 (asking Court to overturn

Commissioner's "conclusion about alleged ball tampering").  That is a complaint that the

Commissioner should have reached different findings of fact.  But "it is the arbitrator's view of

the facts … that [the parties] have agreed to accept."  *Misco*, 484 U.S. at 37-38.  And the

Commissioner found, based on a "full record"—including, among other things, the testimony

and report of the NFLPA's scientific expert (who "performed no independent analysis or

experiments"), the testimony and reports of other scientific experts, and various uncontested,

incriminating behaviors and communications involving Patriots locker-room staff and Brady—

"that the reduction in the pressure of the Patriots footballs was due at least in substantial part to

tampering."  Award at 6-7.  This finding is binding here.  *See Garvey*, 532 U.S. at 509.

The Union's argument that the imposition of the suspension was not "consistent" with

prior precedent fails for the same reasons as its "notice" arguments.  As the Commissioner's

decision explains in considerable detail, this appeal presents a situation never addressed before—

a scheme intended to vitiate the game officials' efforts to ensure fair competition and a deliberate

effort to obstruct the investigation into that scheme by first withholding, and then affirmatively

destroying, potentially relevant evidence.  In these circumstances, and under the governing

standard of review, at the very least, the Commissioner was "arguably" construing the CBA in

finding conduct detrimental and imposing a four-game suspension.  *See* Award at 14.

Accordingly, this Court must reject the motion to vacate.  *See, e.g.*, *Garvey*, 532 U.S. at 510 ("It is the arbitrator's construction [of the agreement] which was bargained for[.]") (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

      **C.**    **The Appeal hearing was procedurally fair.**

      Article 46 of the CBA expressly sets forth the agreed-upon procedures for an appeal of any Commissioner disciplinary decision—procedures that have been in place and largely unchanged for decades.  The player has the right to a hearing at which the Commissioner may preside "at his discretion"; he may choose his counsel; he is entitled to receive prior to the hearing any exhibits on which the NFL intends to rely; he may "attend all hearings"; he may "present, by testimony or otherwise, any evidence relevant to the hearing"; and, following the hearing, he is entitled to a written decision that is "final" and "binding."  CBA Art. 46 § 2.  Brady exercised all of these collectively bargained rights and more, receiving a 10-hour hearing in which his counsel presented testimony from multiple witnesses (fact witnesses and experts alike), cross-examined the NFL's fact and expert witnesses, introduced more than 200 exhibits, and offered wide-ranging legal argument, later supplemented in a post-hearing brief. *See* Award at 1.  The Commissioner issued a reasoned, written, final decision.

      These facts preclude the Union from reasonably arguing that Brady "was denied a fundamentally fair hearing and consequently suffered prejudice."  *Grinnell Hous. Dev. Fund Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 767 F. Supp. 63, 67 (S.D.N.Y. 1991).  A hearing lacking fundamental fairness is one that "denies a party sufficient opportunity to present proof of a claim or defense . . . and renders the resulting arbitral decision biased, irrational or arbitrary."  *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 408 (S.D.N.Y. 2008) (quotation omitted).  But as long as "each of the parties to the dispute had an adequate opportunity to present its evidence and arguments," the decision may not be disturbed. *Red*

*Apple Supermarkets/Supermarkets Acquisitions v. Local 338 RWDSU*, No. 98-cv-2302, 1999

WL 596273, at *5 (S.D.N.Y. Aug. 9, 1999).  And in evaluating claims that a hearing lacked

fundamental fairness, courts must remember that "[a]rbitrators have substantial discretion to

admit or exclude evidence."  *Kolel Beth,* 729 F.3d at 107.

  The Union's "fundamental fairness" arguments do not approach the level permitting

judicial vacatur of this CBA arbitration award.

  *First,* the Commissioner's written decision prior to the hearing not to compel the

testimony of Jeff Pash, the NFL's general counsel, did not render the hearing fundamentally

unfair.  *See* ECF No. 28-234 at 2 (Decision on Hearing Witnesses and Discovery) ("Discovery

Ruling").  Ted Wells, the lead investigator, testified that Pash had played "no substantive role in

the investigation," and any comments he may have provided on a draft of the report "did not

impact" the Paul, Weiss findings.  Award at 19 n.21.  In light of the fact that "arbitrators have

substantial discretion to admit or exclude evidence," the decision not to have cumulative

testimony from Pash is not subject to challenge.  *Kolel Beth*, 729 F.3d at 107; *see id.* (because

arbitration "proceedings require merely an expeditious summary hearing," panel's "decision to

hear only one witness does not make the arbitration fundamentally unfair").

  *Second*, the Commissioner's decision not to grant the NFLPA's request for production of

the Paul, Weiss interview notes offers no basis for vacatur.  *See* Discovery Ruling at 3-5.  The

CBA expressly limits discovery to the exchange of exhibits upon which the parties intend to rely

at the hearing, *see* CBA Art. 46 § 2(f)(i), and the Commissioner's decision to deny additional

discovery was based on his interpretation of that CBA provision.  That interpretation was plainly

reasonable, if not undeniably correct.  As Judge Barbara Jones recently held while serving as the

Hearing Officer in an Article 46 appeal, the CBA "does not contemplate the production of any other documents."  ECF No. 28-192 at Ex. E, p. 1 (*Ray Rice* Discovery Ruling).

The NFLPA also cannot show that the absence of the Paul, Weiss interview notes deprived it of a "sufficient opportunity to present proof of a claim or defense" or rendered the resulting proceeding "irrational or arbitrary."  *Supreme Oil Co*., 568 F. Supp. 2d at 408.  Those notes played no role in the decision on appeal, and were cumulative of information already in the NFLPA's possession, such as the Report itself, the interview notes the NFLPA received from NFL investigators, and the interview notes from Brady's own counsel, who was present at Brady's interview.  Accordingly, this ground for vacating the Award should be rejected.

*Third*, the Commissioner's decision not to hear evidence regarding the purported delegation of disciplinary authority did not affect the fairness of the hearing.  *See* Discovery Ruling at 1; ECF No. 28-186 at 1 (Decision on NFLPA's Motion to Recuse) ("Recusal Ruling").  The Commissioner rejected as unfounded the NFLPA's argument that he had delegated his conduct detrimental disciplinary authority, confirming that he had personally "reviewed the facts set forth in the Wells Report" to determine whether "in [his] own judgment, the identified conduct constituted 'conduct detrimental,'" "concurred in [NFL executive] Troy Vincent's recommendation[,] and authorized him" to communicate the discipline to Brady.  Award at 18-19.  Regardless, nothing in CBA Article 46 (or anywhere else in the CBA) prohibits delegation of initial disciplinary decisions, and the NFLPA cites no such provision.

*Finally*, the NFLPA's contention that Paul, Weiss was not an "independent" investigator and that the Commissioner improperly delegated his fact-finding authority to Paul, Weiss is irrelevant.  The debate about the independence of the investigation has no bearing on whether the NFLPA had an adequate opportunity to present evidence *at the hearing*, which is all that the

12

CBA and fundamental fairness require.  *See Red Apple Supermarkets*, 1999 WL 596273, at \*5.

Furthermore, Article 46 does not require an "independent" investigation prior to the imposition

of discipline, and indeed it is commonplace for NFL personnel other than the Commissioner to

investigate the problematic conduct.  *See* Award at 19 n.20 ("If the entire investigation had been

conducted by in-house NFL employees instead of an outside law firm, I would still view it as a

thorough and reliable basis for my findings and conclusions[.]").

###     D.     The Commissioner was not "evidently partial."

When parties "choose their method of dispute resolution," they "can ask no more

impartiality than inheres in the method they have chosen."  *Williams v. NFL*, 582 F.3d 863, 885

(8th Cir. 2009); *see NHLPA v. Bettman*, No. 93 CIV. 5769 (KMW), 1994 WL 738835, at \*14

(S.D.N.Y. Nov. 9, 1994) (rejecting NHLPA's bias argument because commissioner's "inherent

tendency" to favor league "was fully known or knowable to the [NHLPA] at the time that it

signed the Agreement"); *id.* at \*13 ("[A]n arbitrator's decision will not be set aside for asserted

biases that are either inherent in the method of selection or otherwise known prior to the

selection of the arbitrator."); *see also Ecoline, Inc. v. Local Union No. 12 of Int'l Ass'n of Heat

& Frost Insulators & Asbestos Workers*, 271 F. App'x 70, 72 (2d Cir. 2008) (party who agreed

to panel of partial arbitrators "cannot now resist the arbitration on the grounds that it prefers a

different arbitration").

There is no dispute that "the NFLPA agreed that the Commissioner . . . could serve as the

arbitrator for Article 46 disciplinary appeals[,]" as it has for the past 40 years.  Countercl. ¶ 43.

In agreeing that the Commissioner may serve as arbitrator "at his discretion," CBA Art. 46 §

(2)(a), the NFLPA "waived" any challenge to the Award based on the Commissioner's alleged

"evident partiality."  *Williams*, 582 F.3d at 885.  Indeed, the NFLPA itself appoints the arbitrator

for any disputes involving Union discipline of player agents, and has successfully (and correctly)

rejected challenges that this unilateral appointment right is unfair or renders the arbitrator

evidently partial. *See Black v. Nat'l Football League Players Ass'n*, 87 F. Supp. 2d 1, 5-6

(D.D.C. 2000) (rejecting bias challenge to NFLPA-appointed arbitrator to preside over dispute

between NFLPA and an agent); *see also Williams v. Nat'l Football League*, 495 F. App'x 894,

898 n.2 (10th Cir. 2012) (distinguishing appeal procedures where NFLPA agreed to designation

of partial arbitrator from "typical" arbitrations heard by third-party arbitrators).[3]

      Although the NFLPA argues that it did not agree for the Commissioner to serve as

arbitrator in a case "where . . . the Commissioner's own conduct is at issue," Countercl. ¶ 43, this

supposed limitation appears nowhere in the CBA. In any case, the Commissioner "carefully

reviewed" those arguments and rejected them. *See* Recusal Ruling at 1-3. Interpreting the CBA,

he recognized that he had "discretion" to hear "any appeal" without limitation. *Id.* at 1 (quoting

CBA Art. 46 § 2(a)). He nevertheless confirmed that he had no "first-hand knowledge of any of

the events at issue" and that he had not "prejudged" the appeal simply by expressing appreciation

for the "thorough" Paul, Weiss Report. *Id.* at 2. He also considered and distinguished the

NFLPA's cited cases as not involving a collective bargaining agreement. *See id.* at 3.

      Finally, the NFLPA in no way meets its "heavy burden" to establish that any alleged bias

caused "actual prejudice." *Bettman*, 1994 WL 738835, at *24; *see Williams*, 582 F.3d at 885

(NFLPA has "heavy burden" to show more than the "mere appearance" of bias). It is well-

---

[3] Instead of these Labor Management Relations Act cases, the Union cites *Erving v. Virginia Squires Basketball Club*, 349 F. Supp. 716 (E.D.N.Y. 1972) and *Morris v. New York Football Giants, Inc.*, 575 N.Y.S.2d 1013 (Sup. Ct. 1991). But as this Court recognized in *Bettman*, those cases "involved arbitration provisions in an individual player's contract with his team" rather than "an arbitration provision in a collective bargaining agreement," where "deference should be given to the parties' contractual choices, including presumably the choice of arbitrator[.]" *Bettman*, 1994 WL 738835, at *19 (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580-82 (1960)). The Union's citation to *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. 2015) is inapposite for the same reason.

settled that "[a] showing of evident partiality must be direct and not speculative," and that the party asserting evident partiality bears a "high burden of demonstrating objective facts consistent with impartiality."  *Kolel Beth*, 729 F.3d at 104-06 (bias must be shown by "clear and convincing evidence") (internal quotations omitted).  But the Union offers no "evidence"; instead it merely speculates that the Commissioner must be biased because he affirmed the suspension.

In short, the NFLPA expressly agreed that the Commissioner could preside, "at his discretion," over integrity-of-the-game appeals, CBA Art. 46 § 2(a), and "cannot now be heard to complain" that he chose to do so here.  *Bettman*, 1994 WL 738835, at *14.  A contrary ruling would impermissibly "rewrite the agreement because one party now wishes it were different." *Saint Mary*, 116 F.3d at 45.

## CONCLUSION

The Commissioner conducted the appeal hearing in accordance with the CBA.  He issued a reasoned decision finding facts, assessing credibility, and interpreting the CBA and other relevant documents and "law of the shop" precedent.  There is no cause to overturn that decision, which emanates from the parties' bargaining agreement.  The NFL Management Council respectfully requests that this Court confirm the Award and deny the motion to vacate.

Dated:     August 7, 2015
           New York, New York

By:  _____/s/ Daniel L. Nash_____

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel L. Nash (*pro hac vice*)
1333 New Hampshire Avenue
Washington, DC 20036
Tel :  (202) 887-4000
dnash@akingump.com

*Counsel for Plaintiff National Football League
Management Council* (additional counsel listed on
front cover)

15