UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL,

          Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,

          Defendant.

Case No. 15-cv-5916 (RMB)

**NFL MANAGEMENT COUNCIL'S MEMORANDUM OF LAW IN OPPOSITION
TO NFLPA'S MOTION TO VACATE**

       Supreme Court precedent precludes a retrial of Tom Brady's disciplinary appeal in this

Court.  But that is precisely what the Union seeks.  At its core, the NFLPA's motion merely

disputes whether the discipline imposed on Brady is warranted under the CBA and the facts

presented at the appeal hearing before the Commissioner.  The CBA provides that these questions

were for the Commissioner to answer.  Under the law, his judgment cannot be disturbed.

**I.     THE AWARD MAY NOT BE VACATED BASED ON A CHALLENGE TO THE
        COMMISSIONER'S ANALYSIS OF THE "LAW OF THE SHOP."**

       Relying on the out-of-circuit district court opinion in *Peterson* currently under appeal, the

NFLPA contends that the Award must be vacated because it "ignores" the "law of the shop

requiring advance notice of discipline."  NFLPA Mot. at 3 (citing *NFLPA v. NFL*, 2015 WL

795253 (D. Minn. Feb. 26, 2015), *appeal filed*, 2015 WL 795253 (8th Cir. Feb. 27, 2015) (No.

15-1438)).  But this argument disregards the Award's reasoned analysis concluding that Brady

"had more than adequate notice" that he could be suspended for his conduct here.  Award at 16

(ECF No. 28-236, "Award").  Far from "ignoring" the "law of the shop" regarding notice, the

Commissioner carefully considered it by analyzing various CBA provisions and the relevant facts.  *See generally id.*  The Union's disagreement with the Commissioner's factual findings and interpretations of the CBA and prior arbitration decisions cannot be a basis for vacating the Award.  *See MLBPA v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (award may not be vacated when arbitrator is "even arguably construing or applying the [CBA]").[1]

The Union's suggestion that the Court may reconsider the Commissioner's analysis of the "law of the shop" is simply wrong.  "A federal court may not second-guess" an arbitrator's "conclusion that he was not bound by" a prior arbitration decision.  *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764-65 (1983); *see also Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32-33 (2d Cir. 1997) (arbitrator has no "duty to follow arbitral precedent" and the "failure to do so is [no] reason to vacate an award").  That is because the law requires deference to the *arbitrator*'s consideration of the "law of the shop."  *Local Union No. 135 of United Rubber, Cork, Linoleum & Plastic Workers of Am. v. Dunlop Tire & Rubber Corp. of Buffalo, N.Y.*, 391 F.2d 897, 900 (2d Cir. 1968) ("The labor arbitrator is chosen because the parties presumably believe he has special knowledge of 'the common law of the shop' and an ability to weigh [the relevant] considerations . . . . No judge or aggregation of judges can do this.").  Every circuit court on record agrees, including the Eighth Circuit in a post-*Peterson* decision.  *See SBC Advanced Solutions, Inc.*, *v. Comm'cns Workers of Am., Dist. 6*, No. 14-3351, -- F.3d --, 2015 WL 4528456, at *6-8 (8th Cir. July 28, 2015) (court "will not vacate" an award based on "inconsistency" or "disagreement"

---

[1] Because the Commissioner expressly considered the question of "notice," the Union obviously has no basis for arguing that he engaged in "manifest disregard" of the "governing law" regarding notice.  NFLPA Mot. at 5, n.8.

with a prior award because it is the arbitrator who "has the power to determine whether a prior award is to be given preclusive effect").[2]

Because the Commissioner addressed the notice issue, the Union's argument that he did not apply the "law of the shop"—meaning that he failed to adopt the *Union*'s interpretation of the *Bounty* and *Ray Rice* arbitration decisions—provides no basis upon which to vacate the Award. Nor is the Award in any way inconsistent with those decisions. As the Commissioner explained at length, *Bounty* is "fundamentally different" from this case because the misconduct of the players was largely the result of pressure from coaches and other management representatives. Award at 14-15 & n.14; NFLMC Mot. at 7. And the NFLPA's cited statements from *Rice*—that Article 46 discipline must be "fair and consistent" and that players are generally entitled to notice—are fully consistent with the Award. *E.g.*, Award at 5 (recognizing that Commissioner is "bound . . . by standards of fairness and consistency of treatment among players similarly situated); *id.* at 16 (concluding that "Brady had more than adequate notice").[3]

In short, the Union's argument that the Commissioner disregarded the "law of the shop" regarding "advance notice of discipline" is both incorrect and, as a matter of law, irrelevant.

---

[2] *Accord, e.g.*, *Int'l Union v. Dana Corp*., 278 F.3d 548, 557 (6th Cir. 2002) ("[T]he preclusive effect of an earlier arbitration award is to be determined by the arbitrator" absent a contractual provision stating otherwise.); *El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir. 1992) ("It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions."); *accord IDS Life Ins. Co. v. SunAmerica Life Ins. Co*., 136 F.3d 537, 543 (7th Cir. 1998); *Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Rest. Emps. Union, Local 25,* 963 F.2d 388, 390 (D.C. Cir. 1992); *Little Six Corp. v. United Mine Workers of Am., Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir. 1983).

[3] The NFLPA characterizes the arbitrator's holding in *Rice* as one broadly about the requirement of "proper notice" of disciplinary penalties (NFLPA Mot. at 4), but the decision itself characterizes the "sole issue" as involving the question of "double discipline" without any mention of "notice." ECF No. 28-150, at 9 (*Ray Rice* (Nov. 28, 2014) (Hon. Barbara Jones, Arb.)). But regardless of the Union's asserted interpretation, the law is clear that the application of *Rice* to the facts here was a judgment for the Commissioner and not the Court.

Because the Commissioner was at least "arguably construing or applying the CBA" in finding that Brady had notice that a scheme to tamper with footballs could reasonably be considered "conduct detrimental" warranting suspension, that decision may not be disturbed.  *Cf. Crouch v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 845 F.2d 397, 402-03 (2d Cir. 1988) (holding that district court erred in "delv[ing] into NASCAR's rulebook and decid[ing] *de novo* whether the lap [] incident involved a disqualification" and citing *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527 (7th Cir. 1978), for the proposition that the baseball commissioner's "decision that certain actions were in the best interests of baseball should stand where he acted in good faith, whether or not the court believed he was right or wrong in making this decision").

## II.     THE COMMISSIONER'S FACTUAL FINDINGS MAY NOT BE DISTURBED.

The NFLPA repeatedly asks the Court to review witness testimony and exhibits and to substitute its judgment for that of the Commissioner to arrive at different factual findings and conclusions regarding, for example, the decision that Brady "knew about, approved of, consented to, and provided inducements in support of" the ball tampering.  But, as a matter of law, the Commissioner's evaluation of the evidence is binding here.  *See, e.g., Garvey*, 532 U.S. at 509 (court is "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors . . .").

Even if the law allowed the Union to re-litigate the factual findings and credibility determinations made in Brady's appeal, the record includes ample support for the Commissioner's findings about Brady's involvement in the efforts by the Patriots equipment personnel to deflate the footballs.  This evidence includes the text from Jastremski to McNally that relates a conversation with Brady about the inflation level of game balls, in which Brady had raised McNally's name and said "[McNally] must have a lot of stress trying to get [the footballs] done."  Award at 9.  The evidence also includes the sudden spike in communications between

4

Jastremski and Brady following the AFC Championship Game, as well as the evidence of McNally's demands for cash, clothing and autographed items from Brady, some of which Brady provided. *Id.* at 9-10. And it includes the Commissioner's assessment of Brady's credibility, which he had ample opportunity to evaluate at the hearing. *Id.* at 8-10. Moreover, Brady's failure to cooperate fully with the investigation entitled the Commissioner to draw an adverse inference about Brady's involvement in the ball deflation scheme. *Id.* at 12-13.

The evidence of Brady's obstruction of the league's investigation is not only substantial, but undisputed. The Union tries to minimize the significance of Brady's failure to cooperate, and especially his subsequent destruction of his phone on the eve of his interview with the investigators, by suggesting that the investigators obtained all the relevant electronic communications from other sources—namely, the Patriots employees involved in the tampering. But that assertion is patently false. As the Award explains, the investigators requested *all* electronic communications concerning ball deflation, not just those between Brady and three select Patriots employees. *See* Award at 11 & n.10. Brady never produced any such communications, despite "the very substantial protections offered by the investigators to maintain the privacy of his personal information." *Id.* at 3. Nor did he ever inform the investigators that he had destroyed his phone. *Id.* at 4. Nor has he ever explained why the phones he used both immediately before and after the relevant time period were available for analysis, given his claim that his "ordinary practice" is to "destroy" his old phones. *Id.* at 12. These indisputable facts amply support the Commissioner's finding that Brady "made a deliberate effort" to "conceal potentially relevant evidence," which gives rise to an inference that "he was attempting to conceal evidence of his personal involvement in the tampering scheme." *Id.* at 13; *cf. Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) ("[t]he

5

spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction") (internal quotations omitted).

All this evidence, among other key factual findings, would be more than sufficient to support the Commissioner's conclusions, even without the "extreme[] deferen[ce]" to which they are entitled. *New York City Council of Carpenters v. Ross Sales & Contracting Inc.*, No. 14 CIV. 04106 (RMB), 2015 WL 150923, at *2 (S.D.N.Y. Jan. 5, 2015).

## III. THE UNION'S ARGUMENT THAT THE COMMISSIONER UPHELD THE DISCIPLINE ON A "DIFFERENT" BASIS IS INSUPPORTABLE.

The Union also contends that the Commissioner "exceed[ed] his CBA authority by sustaining discipline on a different basis from that upon which it was imposed"—namely, by finding that Brady "participated" in ball tampering and by considering that he "discard[ed] his phone." NFLPA Mot. 9, 10, n.15. This argument ignores both the CBA and the Award itself.

"The crux of the excess-of-powers standard is 'whether the arbitrator's award draws its essence from the collective bargaining agreement.'" *Am. Postal Workers Union v. U.S. Postal Serv.*, 754 F.3d 109, 112-13 (2d Cir. 2014) (citation omitted). The "limited nature of the Court's role in reviewing arbitration awards extends to determining whether the arbitrator acted within the scope of his authority," *Pfizer Inc. v. ICWUC/UFCW Locals 95C*, No. 13 CIV. 1998 AJN, 2014 WL 1275842, at *7 (S.D.N.Y. Mar. 24, 2014), and "any doubt concerning the scope of the submission [] is to be resolved in favor of coverage," *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 64 (2d Cir. 1988).

Here, the CBA grants the Commissioner a broad "scope of authority" both: (1) to determine whether conduct detrimental discipline should be confirmed on appeal; and (2) to conduct hearings in which a player may, with representation by counsel, "present, by testimony

or otherwise, any evidence relevant to the hearing."  CBA Art. 46 § 2(b) (ECF No. 28-125).  The CBA places *no* limits on the Commissioner's authority to consider new evidence presented in that hearing.

Pursuant to this authority, the Commissioner received evidence from the parties for purposes of determining whether to uphold, vacate, or modify Brady's discipline.  He acted well within the "scope of his authority" in considering that evidence in reaching a conclusion.  Indeed, much of that evidence—including the forensic analysis that revealed that Brady had destroyed his phone (*see* Award at 12)—came from *the Union* itself.  The Union cannot seriously contend that the Commissioner exceeded his authority by considering the evidence it proffered.

Moreover, in no sense did the Commissioner depart from the original "basis for Brady's discipline," as the Union contends.  NFLPA Mot. at 9.  In concluding that Brady "knew about, approved of, consented to, and provided inducements in support of" the ball tampering (Award at 10), the Commissioner confirmed the initial basis for the discipline:  Brady's "role in the use of under-inflated footballs" in "violation of longstanding playing rules," as evidenced by the "substantial and credible evidence" that he was "*at least* generally aware of the actions of the Patriots' employees involved in the deflation of the footballs and that it was unlikely that their actions were done without [his] knowledge."  Discipline Letter at 1 (ECF No. 28-28) (emphasis added); *see also* Wells Report at 19 (ECF No. 28-24) ("unlikely that [they] would deflate game balls without Brady's knowledge and *approval*"); *id.* (they would not "unilaterally [have] engaged in such conduct in the absence of Brady's awareness and *consent.*") (emphasis added).  Likewise, in considering the new evidence that Brady had destroyed his phone, the Commissioner confirmed his initial finding that Brady had "fail[ed] to cooperate fully and

candidly with the investigation." *Id.*; *see* Award at 19 (holding that "my findings and conclusions have not changed in a manner that would benefit Mr. Brady").[4]

## **CONCLUSION**

For the foregoing reasons and as set forth in the NFLMC's Motion to Confirm, the Motion to Confirm should be granted, and the NFLPA's Motion to Vacate should be denied.

Dated:      August 14, 2015
            New York, New York

By:  _____/s/ Daniel L. Nash_____

AKIN GUMP STRAUSS HAUER & FELD LLP

Daniel L. Nash (*pro hac vice*)
Stacey R. Eisenstein (*pro hac vice*)
Gregory W. Knopp (gk5007)
James E. Tysse (*pro hac vice*)
1333 New Hampshire Avenue
Washington, DC 20036
Tel:  (202) 887-4000
dnash@akingump.com
seisenstein@akingump.com
gknopp@akingump.com
jtysse@akingump.com

Robert Pees (rp0393)
Jessica Oliff Daly (jd9012)
One Bryant Park
New York, New York 10036
Tel:  (212) 872-1000
rpees@akingump.com
jodaly@akingump.com

*Counsel for Plaintiff National Football League Management Council*

---

[4] Notably, the Commissioner had the authority to increase the discipline based on the evidence presented at the hearing.  The CBA provides that, in appeals of fines imposed for unnecessary roughness or unsportsmanlike conduct on the playing field with respect to another player, the discipline "may only be affirmed, reduced, or vacated by the hearing officer, and may not be increased."  *See* CBA Art. 46, Sec. 2(d) ("Decision").  The CBA imposes no such limitation on the Commissioner's decision in appeals such as this one involving discipline imposed under Article 46, Section 1(a) for conduct detrimental to the integrity of the game.  *Id.*