

Robert F. Young
209 Holman Road
Fitzwilliam, NH 03447
Robert.Young@BetterDialogue.com
603 494 7677

August 25, 2015

Hon. Richard M. Berman
United States District Court, Southern District of New York
500 Pearl Street, Room 1650
New York, NY 10007

**MEMO ENDORSED**
Clerk to Docket
See Attached

Re: Permission requested to file AMICUS CURIAE IN OPPOSITION TO
THE NFL'S MOTION TO CONFIRM ARBITRATION AWARD Case No. 15-cv-5916 (RMB)(JCF)

Your Honor,

I have prepared an amicus curiae that I'm confident will uniquely bring clarity to the fundamental issues in this case and to the underlying dispute. From my reading of the reports and rebuttals, appeal transcript, filings, and public dialogue, I see that no other source has looked in the right place in the right way to uncover the fundamental insight into why this dispute landed before you rather than going away on its own.

Even if you are generally against opening Pandora's box by accepting even one amicus for this case, I urge you to have someone you trust vet this for you.

From the appellate amicus rules, I surmise that your court has the leeway to receive and consider a brief in conjunction with deciding whether to grant permission to file. I have attached the offered amicus and an extra copy. The proof is in the pudding.

In the event that the Court is receiving too many requests such as mine to have time to consider them all, please note that I have qualifications that are enough differentiated such that reading mine does not obligate the Court to read every such request.[1]

On the last page I show that my request fits within the normal use of amicus briefs.

Given all the noise around this case, **please allow me two paragraphs to show the most important insight I offer:**

The basic research came so close explaining the game-day measurements that the scandal now hinges on a much more narrow question: how much one believes the Patriots balls had warmed up after

---

[1] I graduated from Dartmouth College, as an engineering major, with class rank 2/1005. My line of work in technical competitive analysis for the past 10 years frequently involves studying technical data and identifying and exposing cleverly hidden assumptions. This is the critical expertise the defense has lacked

1

leaving the field, before they were measured?  That answer, when applied to the Exponent graphs, determines whether tampering was likely, uncertain, or disproven by their studies.  It also drives whether the alleged amount of any tampering provided legitimate motive for conspiracy and whether game-integrity was affected.

The American Enterprise Institute's (AEI) "On the Wells Report," attempting to rebut the Wells report, noted that the Patriot balls showed no evidence of a warming trend while being measured at halftime[2]. AEI used this to question NFL accounts of the timing, and thus of when the average ball was measured[3], and thus the warming.  Unfortunately for AEI, AEI's evidence lacked the statistical weight to over-turn witness testimony on the timing.   Instead of questioning timing, AEI could have looked for evidence that the warming test was *deliberately* rigged to produce too high a result compared to the game-day events. It was and I prove it beyond a reasonable doubt.  Based on that I further prove that Exponent knew that to the best of their knowledge, the Patriot ball pressures were adequately explained by their testing. The central conclusion of the Exponent report was a lie.  Exponent's data clears the Patriots and thus Tom Brady.

How it is proven: The Exponent simulation data showed the balls warming at exactly the same rate as an earlier lab-bench experiment that Exponent did using a single football alone on a small pedestal on a table.   Exponent even commented on the correlation, although not in those words.  In contrast, Exponent documented that on game-day, the balls remained in a bag on the floor until immediately before each one was tested.  If Exponent thinks that refrigerated groceries might warm even a little slower in the bag than if spread out on the table, then you know that Exponent knows that their simulation was biased toward too much warming.  Furthermore, Exponent knew that the game-day measurements trended downward rather than upward.  The game-day ball pressure trends during measurement rejected with 90% probability the notion that the balls were warming up as fast as they did in Exponent's simulation.  With even a slight correction to reflect slower warming, the Exponent research shows that the Patriot ball pressures are adequately explained without presuming unknown factors or cheating.

The content of my brief (which goes beyond just the above) is vital to timely justice.

Why my amicus fits the normal criteria for amicus:

> Stake in the outcome: are important stakeholders other than the litigants.  The wellbeing of fans of the New England Patriots would, if quantified by any reasonable means, exceed the dollars at

---

[2] "On the Wells Report", page 9, bottom left "The coefficient on the count variable for the order in which the balls were tested in our regression (Nk) varies in precisely the way that one would expect to observe if the individual Patriots balls were tested in rapid succession"

[3] Same as note 6"On the Wells Report", page 7k, right side "The fact that the officials ran out of time is highly material: it implies that the Colts balls were inside a warm room for almost the entire halftime before they were measured and thus had a chance to warm up."  Given AEI's conclusion that testing is very rapid, AEI suggests that colts testing began and completed all at the very last minute.

2

stake for the parties in the action[4]. In addition, I have a demonstrated interest the larger issue of fair dispute resolution. This, more than my interest in Patriots' football, is what ultimately compelled me to weigh in. Robert Blecker, professor at New York Law School, has also put great effort into addressing the unfairness to the Patriots, despite rooting against the Patriots on the field. Many others share this interest.

Interests separate from the defense: NFLPA: As to the question of why the defense doesn't adequately represent those interests, first consider that the interests of the fans do not appear to fully align with those of the NFLPA or the defense counsel. The NFLPA would prefer a ruling on procedural grounds that broadly weakens the Commissioner, rather than a ruling unique to this case.

Disagreement with the defense representation and strategy: There is possible conflict with the defense counsel in general because, as a practical matter, the information I provide does not reflect well on their past work and their chosen strategy. The defense committed to a strategy of casting doubt on the research rather than understanding why, even taking some positions favorable to the Patriots, Exponent still appeared to show unexplained pressure loss. The defense seemed to look for benefit of the doubt instead of vindication. The defense team may feel that bringing up these matters now makes it look as though the defense is asking the Court for relief from the defense's inadequate preparation for the appeal hearing. Howeer, my analysis shows that it was the misrepresentations about the process by Roger Goodell that caused the defense to not find this evidence in time for the appeal.

The defense has been too dismissive of the CBA intent to put the league as a whole far above individual rights. This could be because they have built their case on the presumption that the CBA doesn't allow the NFL to operate like the WWF should it choose. Contrary to the defense view, I believe the CBA was intended to allow the commissioner to act tough whenever the commissioner thinks something is hurting the league's image. The public does not want to see suspicious, accused parties playing while lengthy, court-like processes grind along. Fairness is largely secondary to whatever helps the League get ratings. The result benefits players at large even though a few unlucky ones will suffer.

The defense has shown a pattern of not leveraging community/crowd-sourced insights. Professor Robert Blecker of New York Law School told me that he has personally experienced this issue with the defense. This pattern is evident in the poor use of time by the defense in the appeal hearing transcript, and in their lack of asking the questions widely known to better address the Exponent report findings.

---

[4] On average, purchases are made at a price lower than the maximum price the average customer would be willing to pay if they had to. (That concept is called "consumer surplus".) Most fans of the Patriots are paying very little for their enjoyment but spend considerable time and energy on it. Therefore, the likely value to the fan base of having a competitive team greatly exceeds the direct revenues of the Patriots. Tom Brady's compensation is much lower than the total team budget. Therefore value to the fans collectively greatly exceeds the value to Tom Brady. Thus the impact on the fans exceeds the stakes for the litigants. Note: The interests of fans disliking the patriots seem adequately served by the plaintiff.

3

Uniqueness and importance of input: If the Court is unaware of the insights unique to my brief, I can envision the defense losing the case.

Sincerely,

*Robert F. Young*

Robert F. Young.

Thank you for your submission – I apologize for the delay in responding.

We have placed your submission on the court dockets for the NFL v. NFLPA (Tom Brady) matter (15 Civ. 5916 and 15 Civ. 5982).

*RMB*

Richard M. Berman, USDJ

9/10/15